UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASHAUNE STOKES, ANTHONY RAY and ANTHONY DOUGHTY, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>GATE GOURMET, INC.,<br><br>        Defendant. | |

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1331, 1332, 1441 and 1446, Defendant Gate Gourmet, Inc. ("Gate Gourmet" or "Defendant") hereby removes the civil action pending in the Circuit Court of Cook County, Illinois, Chancery Division, Case No. 2019-CH-13755, to the United States District Court for the Northern District of Illinois, Eastern Division. In support of removal, Gate Gourmet states as follows:

1.  On November 27, 2019, Plaintiffs Lashaune Stokes, Anthony Ray, and Anthony Doughty commenced an action against Defendant by filing in the Circuit Court of Cook County, Illinois a complaint styled as *LASHAUNE STOKES, ANTHONY RAY and ANTHONY DOUGHTY, individually, and on behalf of all others similarly situated v. Gate Gourmet*, Case No. 2019-CH-13755. (A copy of the Complaint and summons served upon Gate Gourmet is attached hereto as **Exhibit A**). The Complaint seeks relief under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.*, including, among other things, damages of $1,000 to $5,000 for *each* violation of Defendant's negligent and/or reckless violations of BIPA. (Ex. A at ¶¶ 25,

85, 95, and 104). Gate Gourmet was served with the Complaint on December 3, 2019. (*See* Notice of Service of Process, **Ex. A**).

## I. This Matter Meets All The Requirements Of 28 U.S.C. § 1332(d)(2) For Jurisdiction Under CAFA.

2. This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which grants to the United States District Courts original jurisdiction over "any civil action" [1] in which the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and [2] is a "class action" in which, among other things, "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d); *see also Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012) (noting that the "language and structure of CAFA . . . indicate[ ] that Congress contemplated broad federal court jurisdiction with only narrow exceptions"). This case meets all the requirements for jurisdiction under CAFA.

3. This matter is a "class action" under CAFA because a "class action" for purposes of CAFA is defined as "any civil action filed in a district court of the United States under Rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The Complaint purports to allege claims on behalf of a class of "[a]ll individuals working for Defendant who had their fingerprints collected, captured, received, otherwise obtained, maintained, stored or disclosed by one or more of the Defendants during the applicable statutory period" and "[a]ll individuals working for Defendant who had their handprints collected, captured, received, otherwise obtained, maintained, stored or disclosed by one or more of the

Defendants during the applicable statutory period." (Ex. A at ¶ 67). Therefore, this action is properly considered a "class action" under CAFA.

4. The requirement of minimal diversity is also satisfied. Stokes, Ray, and Doughty are citizens of the State of Illinois. (*See* Ex. A at ¶¶ 16-18). Defendant is a citizen of a State other than Illinois within the meaning of 28 U.S.C. Section 1332(d). Defendant is now, and was at the time this action commenced, a corporation formed under the laws of the State of Delaware, with its principal place of business in the State of Virginia. Defendant's principal place of business is in Virginia, because its "nerve center" is located in Reston, Virginia. Gate Gourmet's headquarters, where its officers direct, control, and coordinate its activities is in Reston, Virginia. Per the United States Supreme Court's decision in *Hertz Corp. v. Friend*, 559 U.S. 77, 95 (2010), the appropriate test to determine a corporation's principal place of business is the place where its "officers direct, control and coordinate the corporation's activities.") The Reston corporate office is where Gate Gourmet's senior management and high level officers manage its executive and administrative operations, including operations relating to administering company-wide policies and procedures, legal affairs, and general business operations. Therefore, Defendant is a citizen of the State of Virginia pursuant to the "nerve center" test, and a citizen of the State of Delaware pursuant to its organization. As a result, the parties meet the requirement of minimal diversity for purposes of 28 U.S.C. § 1332(d)(2)(A).

5. Further, the "matter in controversy" aggregated across all the purported class members' claims satisfies CAFA. Under CAFA, "the matter in controversy" must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy in class actions, CAFA expressly requires that "the claims of the individual members shall be aggregated . . ." 28 U.S.C. § 1332(d)(6).

60773779v.2

6. For this amount in controversy to be satisfied, there need only be "a reasonable probability that the stakes exceed" $5,000,000. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). In this regard, the Seventh Circuit has acknowledged "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). Accordingly, "the party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448 (7th Cir. 2005)). This burden thus "is a pleading requirement, not a demand for proof." *Id*. (quoting *Spivey v. Vertrue, Inc*., 528 F.3d 982, 986 (7th Cir. 2008)).

7. Defendant denies the validity and merit of the entirety of Stokes, Ray, and Doughty's alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that allegedly flow therefrom. But for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiffs or the putative class are entitled to damages or penalties or any relief whatsoever—it is apparent that although the complaint does not affirmatively specify a damages figure, the aggregated claims of the putative class exceeds CAFA's jurisdictional minimum.

8. The Complaint alleges that Stokes worked as a Driver from May 2016 to the present and that "Defendant scanned, collected and/or obtained Stokes' fingerprint so Defendant could use it as an authentication method to track his time." (Ex. A at ¶¶ 48-49). Likewise, Ray alleges to have worked as a Driver from January 2004 to the present and that "Defendant scanned, collected and/or obtained Ray's fingerprint so Defendant could use it as an authentication method to track his time." (*Id.* at ¶¶ 50-51). Finally, Doughty alleges to have worked as a Driver from October

4

2003 to the present and that "Defendant scanned, collected and/or obtained Doughty's fingerprint so Defendant could use it as an authentication method to track his time." (*Id.* at ¶¶ 52-53). In addition, the Complaint alleges "Defendant also scanned, collected and/or obtained Doughty's handprint so Defendant could use it as an authorization method to enable access to the building where Doughty worked." (*Id.* at ¶ 54).

9. Given that the Complaint is seeking "$1,000 to $5,000 in statutory damages" for *each* violation of BIPA (Ex. A at ¶ 25), while also alleging three separate causes of action under BIPA, (Ex. A at ¶¶ 25, 85, 95, and 104), it is plausible that Stokes, Ray, and Doughty seek to recover $3,000 to $15,000 in damages for each time they clocked in or out from work over for the entirety of the "applicable time period" they were employed by Defendant and Doughty seeks an additional $3,000 to $15,000 for each time he accessed the building over for the entirety of the "applicable time period" he was employed by Defendant.

10. This Court has found the amount in controversy requirement is satisfied when a Complaint alleges a violation of BIPA while also alleging "Plaintiff was required to scan her fingerprint each time she clocked in for work and clocked out of work." *Peatry v. Bimbo Bakeries USA, Inc.*, 19-cv-2942, 2019 WL 3824205 (N.D. Ill. Aug. 7, 2019) ("[T]he Court agrees with Bimbo that Peatry's complaint and BIPA together can plausibly be read to suggest that a violation of at least some of the BIPA provisions at issue allegedly occurred every time Peatry and the putative class members clocked in and out of work."); *see also Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (a "removing party [ ] only must establish the amount in controversy by a good faith estimate that is plausible and adequately supported by the evidence") (internal quotation omitted).

60773779v.2

11.     Defendant *does not* agree that Stokes, Ray, or Doughty are entitled to that measure of damages under BIPA,[1] but, for removal purposes, the question is not "what damages the plaintiff will recover, but only how much is *in controversy* between the parties." *Id.* (emphasis in original; internal citation and quotation omitted).

12.     Applying the damages theory set forth above to the more than 50 persons who Stokes, Ray, and Doughty allege to be in the class, (Ex. A at ¶ 69), would well exceed the jurisdictional threshold, even when limiting the damages sought to the claims against only a single Defendant. Stokes, Ray, and Doughty allege that each class member is entitled to recover $30,000 individually for only a single day of work. Assuming only 50 class members aside from Stokes, Ray, and Doughty, the class would only need to average four (4) total work days to have a claim over $5,000,000 in the aggregate.[2] *See Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2019 WL 3824205, at *2 (N.D. Ill. Aug. 7, 2019) ("Treating each scan as a separate violation, Peatry would only need to have scanned her fingerprint sixteen times to exceed the $75,000 threshold, which she plausibly did many more times over the course of her thirty months of employment. Alternatively, Bimbo claims that the Court has jurisdiction under CAFA, with a class of at least 300 members needing to only scan their fingerprints four times each to exceed CAFA's $5 million amount in controversy requirement.")

13.     Moreover, Stokes, Ray, Doughty, and the class are seeking injunctive relief and attorneys' fees, which also factor into evaluating the amount in controversy for jurisdictional purposes. *See Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (in a suit for

---

[1] Defendant denies that Stokes, Ray, and Doughty allege an actionable violation of BIPA each and every time they clocked in and out because, among other things, such a result would conflict with a plain language of the statute and would raise serious constitutional and policy concerns. Nonetheless, for purposes of removal, Stokes, Ray, and Doughty's allegations and requested relief, and the plausible inferences drawn therefrom, must be accepted as true for purposes of determining the amount in controversy. *See generally CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000).

[2] $5,000,000/(53*30,000) = 3.14$ days.

60773779v.2

injunctive relief, "the amount in controversy is measured by the value of the object of the litigation"); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation"); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001) (where state statute allowed recovery of attorney's fees, fees incurred as of the date of filing properly included in amount-in-controversy analysis); *see also Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998) (similar); *cf. Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (similar).

14. Defendant denies that Stokes, Ray, Doughty, and the purported class could recover any damages, much less any damages for "willful" violations of BIPA, but for purposes of determining whether subject matter jurisdiction exists under CAFA, the amount in controversy is satisfied.

## II. Diversity-Of-Citizenship Jurisdiction Exists Because The Parties Are Citizens Of Different States And The Amount In Controversy Is Satisfied.

15. Complete diversity exists between the parties. *See Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 458 (7th Cir. 2018) (diversity of citizenship jurisdiction "requires complete diversity between the parties"). Stokes, Ray, and Doughty are a citizens of the State of Illinois (*see* Ex. A at ¶¶ 16-18), and Defendant is not a "citizen" of Illinois. *See supra* ¶ 4. The parties thus are completely diverse and, because Defendant is not a citizen of the state in which the action was brought, *see* 28 U.S.C. § 1441(b)(2), the "citizenship" component of the removal analysis is satisfied.

16. The amount-in-controversy requirement is satisfied, as well. While the complaint does not affirmatively specify a damages figure, and while Defendant denies any liability whatsoever as to Stokes, Ray, and Doughty's claims, the amount-in-controversy requirement is

7

satisfied because, according to the Complaint, it appears that Stokes, Ray, and Doughty are seeking damages in excess of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1446(c)(2); *see also Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 135 S. Ct. 547, 554, (2014) ("a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"). It is plausible that Stokes, Ray, and Doughty seek to recover $3,000 to $15,000 in damages for each time they clocked in or out from work over for the entirety of the "applicable time period" they were employed by Defendant and Doughty seeks an additional $3,000 to $15,000 for each time he accessed the building over for the entirety of the "applicable time period" he was employed by Defendant. Accordingly, each Plaintiff would need little more than three days' worth of clocking in and out to satisfy the amount in controversy as to each Plaintiff.

17. Stokes, Ray, and Doughty also are seeking injunctive relief and attorneys' fees, which also factor into evaluating the amount in controversy for jurisdictional purposes. *See Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (in a suit for injunctive relief, "the amount in controversy is measured by the value of the object of the litigation"); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation"); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001) (where state statute allowed recovery of attorney's fees, fees incurred as of the date of filing properly included in amount-in-controversy analysis); *see also Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998) (similar); *cf. Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (similar). Therefore, Stokes, Ray, and Doughty's additional requested relief further sustains that more than $75,000 is at issue for each Plaintiff.

8

**III.     Plaintiffs' Claims Are Preempted by the Railway Labor Act, 45 U.S.C. §§ 151, *et seq***

18.     Defendant is a common carrier, as such term is defined in the Railway Labor Act ("RLA"), and therefore covered by the Railway Labor Act ("RLA").  See 45 U.S.C. § 181.

19.     Stokes, Ray, and Doughty worked for Defendant as Drivers.  (Compl. ¶ 48-54). Stokes, Ray, and Doughty were each represented for the purposes of collective bargaining with Defendant by The International Brotherhood of Teamsters ("IBT").  (Declaration of Laurie Pack ("Pack Decl.") ¶ 8, attached hereto as Exhibit B).

20.     Gate Gourmet and IBT/UNITE HERE are parties to a collective bargaining agreement ("CBA"), which governs Stokes, Ray, and Doughty's terms and conditions of employment.  (Pack Decl. ¶¶ 8-9 and Ex. 1).

21.     The CBA contains a three-step grievance procedure for the resolution of disputes arising under the CBA.  (See Pack Decl. ¶ 10 and Ex. 1 at Article 9).  As required by the Railway Labor Act, the procedure culminates in a hearing before the System Board of Adjustment: "All grievances not settled in these steps may proceed to the System Board of Adjustment." (See Pack Decl. ¶ 10 and Ex. 1 at Article 9, § 3).  *See also* 45 U.S.C. § 184.

22.     In their Complaint in the state court action, Stokes, Ray, and Doughty attempt to recast this contractual grievance into a statutory claim against Defendant, claiming that Defendant captured, collected, stored, transferred, and used their fingerprints and handprints without notice or consent, an alleged violation of BIPA.

23.     Stokes, Ray, and Doughty's claims—though they attempt to cast it in a different light—is a classic "minor dispute" under the RLA.  A "minor dispute" in RLA parlance is any dispute that grows "out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."  *See, e.g., Monroe v. Missouri Pac. R.R. Co.*,

9

115 F.3d 514, 516 (7th Cir. 1997). Minor disputes also involve the application of unwritten past practices between RLA employers and the unions that represent their employees. *See, e.g., Brotherhood of Ry., Airline, and Steamship Clerks, Freight Handlers, Express & Station Employees v. Atchison, Topeka and Santa Fe Ry. Co.*, 847 F.2d 403, 406 (7th Cir. 1988). Because any analysis of Stokes, Ray, and Doughty's claims in this lawsuit will "necessarily require[] interpretation of the CBA to determine the validity of [their] arguments regarding [Defendants' actions]," their claims are a minor dispute under the RLA. *See Monroe*, 115 F.3d at 518.

24. Minor disputes can be adjudicated only under the RLA. *See, e.g., id*. Accordingly, Stokes, Ray, and Doughty's claims are preempted by federal law and removable to federal court. *See, e.g., Hammond v. Terminal R.R. Ass'n of St. Louis*, 848 F.2d 95, 97 (7th Cir. 1988) (holding that plaintiff's state law claim involving a minor dispute under the RLA was properly removed to federal court).

25. Indeed, the Seventh Circuit has held that in cases brought by workers who are members of unions subject to the Railway Labor Act, claims pursuant to BIPA are removable to federal court and then further subject to preemption. *See Miller v. Sw. Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019) ("A dispute about the interpretation or administration of a collective bargaining agreement must be resolved by an adjustment board under the Railway Labor Act. There is no doubt that Southwest has a collective bargaining agreement with the union that represents the three plaintiffs. . . . And there can be no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining.")

**IV.  Defendant Has Satisfied the Procedural Requirements for Removal.**

26. Given that the Complaint does not affirmatively and unambiguously allege the total amount of damages being sought, and given that Defendant has received no other pleading or other

paper that affirmatively and unambiguously discloses the amount of monetary damages sought, this Notice of Removal is timely. *See Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (2103) ("The 30-day removal clock [under CAFA] does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present. With respect to the amount of controversy in particular, the pleading or other paper must specifically disclose the amount of monetary damages sought.") This Notice of Removal is timely because it is being filed within 30 days of Defendant's receipt of the Summons and Complaint on December 3, 2019, and within one year of the commencement of this action. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under the applicable state law).

27. Because this action is brought in the Circuit Court of Cook County, Illinois, venue for purposes of removal is proper in this Court under 28 U.S.C. § 93(a)(1): this District and this Division embraces Cook County, Illinois, the place where the removed action has been pending. *See* 28 U.S.C. § 93(a)(1); 28 U.S.C. § 1441(a).

28. In accordance with 28 U.S.C. §1446(a), a copy of all process, pleadings, and orders served on Defendant have been attached as Exhibit A.

29. In accordance with 28 U.S.C. §1446(d), Gate Gourmet will promptly provide written notice to Stokes, Ray, and Doughty and will promptly file a copy of this Notice of Removal with the Clerk of the Court for the Circuit Court of Cook County, Illinois.

\* \* \*

For the foregoing reasons, Defendant hereby removes this case from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois,

11

Eastern Division and further requests that this Court accept this Notice of Removal and assume jurisdiction over this matter for all further proceedings.

| | |
|---|---|
| Dated: January 2, 2020 | Respectfully Submitted, |
| | *Gate Gourmet, Inc.* |
| | */s/ Andrew R. Cockroft* <br> One of Their Attorneys |

Thomas E. Ahlering
tahlering@seyfarth.com
Andrew R. Cockroft
acockroft@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, Illinois 60606
Telephone: 312-460-5000
Facsimile: 312-460-7000

**Counsel for Defendant Gate Gourmet, Inc.**

60773779v.2

## **CERTIFICATE OF SERVICE**

I, Andrew R. Cockroft, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **NOTICE OF REMOVAL**, to be filed through the Court's CM/ECF system, and will serve the below Counsel of Record via email and Federal Express:

>Ryan Stephan
>rstephan@stephanzouras.com
>Stephan Zouras, LLP
>100 N. Riverside Plaza, Suite 2150
>Chicago, Illinois 60606

*/s/ Andrew R. Cockroft*