# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| LASHAUNE STOKES, ANTHONY RAY and ANTHONY DOUGHTY, individually, and on behalf of all others similarly situated, | Case No. 20-cv-00016 |
| Plaintiffs, | Honorable John J. Tharp |
| v. | |
| GATE GOURMET, INC., | |
| Defendant. | |

## DEFENDANT GATE GOURMET, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Gate Gourmet, Inc., ("Gate Gourmet" or "Defendant") respectfully moves to dismiss Plaintiffs Lashaune Stokes, Anthony Ray, and Anthony Doughty's ("Plaintiffs") Complaint ("Compl.," ECF No. 1-1) in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, Rule 12(b)(6).

## INTRODUCTION

*First*, Plaintiffs' Illinois Biometric Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.*, claims constitute a "minor dispute" within the meaning of the Railway Labor Act ("RLA"), and, as such, their claims are subject to mandatory and exclusive arbitration.[1] This issue has been definitively resolved by the United States Court of Appeals for the Seventh Circuit Court of Appeals, which recently held that a suit brought pursuant to BIPA is preempted by the RLA, and such a dispute must be referred to an adjustment board rather than proceed in court. *See Miller v. Sw. Airlines Co.*, 926 F.3d 898, 900 (7th Cir. 2019) ("We have consolidated two appeals that

---

[1] Businesses in the airline industry, including Defendant, are covered by the RLA and minor disputes are resolved by an adjustment board established by the business and the unions. *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 304 n.4 (1989).

pose a common question: whether persons who contend that air carriers have violated state law by using biometric identification in the workplace must present these contentions to an adjustment board under the [RLA]. . . .The answer is yes. . . . .").  Plaintiffs' claims are therefore preempted by the RLA, thereby stripping the Court of subject matter jurisdiction.  Accordingly, the case must be dismissed with prejudice.

*Second*, even if Plaintiffs' claims were not preempted by the RLA, dismissal still would be warranted because any claim for damages under BIPA is preempted by the Illinois Workers' Compensation Act ("IWCA"), which provides the exclusive remedies for injuries arising amid the employer-employee relationship.

## BACKGROUND

### I.    Plaintiffs' Complaint and Procedural History

On November 27, 2019, Plaintiffs Lashaune Stokes, Anthony Ray, and Anthony Doughty commenced an action against Defendant by filing in the Circuit Court of Cook County, Illinois a complaint captioned as *LASHAUNE STOKES, ANTHONY RAY and ANTHONY DOUGHTY, individually, and on behalf of all others similarly situated v. Gate Gourmet*, Case No. 2019-CH-13755.  (ECF No. 1-1).

Plaintiffs work for Defendant[2] as Drivers.  (Compl. ¶ 48-54).  Plaintiffs' Complaint alleges that Defendant violated BIPA by implementing a timekeeping system that relied on the collection, storage, and usage of employees' fingerprints and biometric information without obtaining a written release.  (*Id.*)  BIPA defines a "written release" as "informed written consent or, in the context of employment, a release executed by an employee as a condition of

---

[2] Defendant is a common carrier, as such term is defined in the RLA, and therefore covered by the RLA. *See* 45 U.S.C. § 181; *see also Miller v. Sw. Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019) ("As a matter of federal law, unions in the air transportation business are the workers' exclusive bargaining agents.")

employment." 740 ILCS 14/10. Plaintiffs further allege that Defendant violated BIPA by not making available a written policy addressing retention and destruction of such information and not obtaining consent for transmission of such information to third parties. (Compl. ¶¶ 55-61.)

On January 2, 2020, Gate Gourmet timely filed a notice of removal in this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, on the grounds that the instant claim is preempted by the RLA, meets the diversity and amount-in-controversy requirements under CAFA, and meets the diversity and amount-in-controversy requirements for diversity jurisdiction as to each named-Plaintiff. (ECF No. 1.)

## II. Plaintiffs' Employment is Governed by a Collective Bargaining Agreement, Pursuant to the RLA

Plaintiffs are represented for the purposes of collective bargaining by The International Brotherhood of Teamsters ("IBT") relating to their employment with Defendant. (ECF No. 1-2, Declaration of Laurie Pack ("Pack Decl.") ¶ 8).[3] Defendant and IBT are parties to a collective bargaining agreement ("CBA"), which governs the terms and conditions of Plaintiffs' employment. (Pack Decl. ¶¶ 8-9 & Ex. 1). The CBA provides that "[t]he parties agree to use voluntary efforts to achieve industrial stability under the structure provided by the Railway Labor Act." (*Id.*, Ex. 1 at Preamble § 4). The CBA contains a management rights clause providing that the CBA "is not intended to interfere with, abridge or limit [Gate Gourmet] in the exercise of its function of management or the control of its business and the direction of its working force" including "the extent of its operations and the nature of the work to be performed," and the "schedules and number of hours an Employee shall work per day or per week." (Pack Decl. ¶¶ 8-9 & Ex. 1 at Article 26 §§ 1-2.)

---

[3] The Declaration of Laurie Peck and the attached exhibit ("Ex. 1") were filed in conjunction with Defendant's Notice of Removal. (*See* ECF No. 1-2.)

The CBA contains a three-step grievance procedure for the resolution of disputes arising under the CBA. (*See id.* ¶ 10 & Ex. 1 at Article 9). Specifically, the CBA first states that the grievance procedure applies "[s]hould differences arise between the Company and any Employees as to the meaning and application of the NMA, or if any other controversy or grievance arises. . . ." *Id.*, Ex. 1 at Article 9 § 1. If either an employee or the union have a grievance, the CBA requires the first step of "present[ing] the grievance to his immediate supervisor within seven (7) calendar days of the action giving rise to the grievance," the employee and supervisor must "make a good faith effort to resolve the grievance," and "the supervisor will give a written response to the grievance (whether resolved or not) within seven (7) calendar days following the receipt of the grievance." *Id.* Notably, the CBA requires that "all grievances must be submitted as provided in Step 1 above within seven (7) calendar days of the Company's action giving rise to the grievance, or the grievance shall be considered to be waived and may not thereafter be submitted for adjustment in any forum." *Id.*

Next, the CBA requires that "[i]f not resolved at Step 1, the grievance may be appealed by either the Union Representative, Chief Steward, Shop Steward and/or the aggrieved Employee to the General Manager or his designated representative." *Id.* If the grievance is not satisfactorily settled, then the grievance may be appealed to Step 3 at which point the "Union may appeal to the Regional Human Resource Director (RHRD) or his designated representative." *Id.* As required by the RLA, the procedure culminates in a hearing before the System Board of Adjustment: "All grievances not settled in these steps may proceed to the System Board of Adjustment." (Pack Decl. ¶ 10 & Ex. 1 at Article 9 § 3); *see also* 45 U.S.C. § 184.

//

//

4

## LEGAL STANDARDS

A party may assert that the court lacks subject matter jurisdiction by motion, pursuant to Rule 12(b)(1). When a party moves to dismiss for lack of subject matter jurisdiction, a district court may look beyond the pleadings and view whatever evidence has been submitted on the issue. *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008) (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). RLA preemption is properly addressed via a Rule 12(b)(1) motion. *Miller*, 926 F.3d at 901 (7th Cir. 2019) (noting that dismissal on the basis of RLA preemption "should have been labeled either as a judgment on the pleadings, Fed R. Civ. P. 12(c), or a dismissal for lack of subject-matter jurisdiction, as this circuit's decisions suggest.") (citing *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 824–25 (7th Cir. 2014); *Brotherhood of Maintenance of Way Employees v. Norfolk Southern Ry.*, 745 F.3d 808 (7th Cir. 2014); *Brown v. Illinois Central R.R.*, 254 F.3d 654 (7th Cir. 2001)).

Regarding Rule 12(b)(6), a complaint "does not need detailed factual allegations," but it must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Bare "legal conclusions" and "threadbare recitals of the elements of a cause of action" are not sufficient to survive a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), because a plaintiff cannot "merely parrot statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (parentheses in original).

//

//

//

**ARGUMENT**

I.     **Plaintiffs' BIPA Claims are a "Minor" Dispute that Must be Resolved Only Through RLA Mechanisms,  Thereby Stripping the Court of Subject Matter Jurisdiction**

      A.     **The Seventh Circuit's Recent Decision in *Miller v. Sw. Airlines* is Directly On Point, Controlling, and Forecloses Plaintiffs' Claims.**

The Seventh Circuit's recent decision in *Miller v. Sw. Airlines Co.*—affirming dismissal based on a lack of subject-matter jurisdiction and holding that plaintiffs' BIPA claims against United Airlines and Southwest Airlines must be resolved by an adjustment board—is directly on point and requires dismissal of the instant suit.  *Miller*, 926 F.3d at 903-4.  As noted by the Seventh Circuit in *Miller*, "there can be no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining."  *Id.* at 903 (citing 45 U.S.C. § 152).  "[U]nions in the air transportation business are the workers' exclusive bargaining agents" and "a state cannot remove a topic from the union's purview and require direct bargaining between individual workers and management."  *Id.*

The Seventh Circuit in *Miller* definitively resolved this precise issue which directly forecloses Plaintiffs' claims in this action, holding:

> Whether Southwest's or United's unions did consent to the collection and use of biometric data, or perhaps grant authority through a management-rights clause, is a question for an adjustment board.  Similarly, the retention and destruction schedules for biometric data, and whether air carriers may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management.  States cannot bypass the mechanisms of the Railway Labor Act and authorize direct negotiation or litigation between workers and management.

> ***

> It is not possible even in principle to litigate a dispute about how an air carrier acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf.  That's why this dispute must go to an adjustment board.

*Id*. at 903-04.

No further discussion is necessary because this Court is bound by the holding in *Miller* and Defendant's conduct was consistent with and sanctioned by the explicit and implied terms of the CBA governing Plaintiffs' employment. Any challenge to Defendant's timekeeping system is subject to the mandatory grievance and arbitration procedure established in the CBA pursuant to the RLA and thus, "there's no room for individual employees to sue under state law." *Id.*;[4] *see also Mazya v. Northwestern Lake Forest Hospital et al.*, 19-CV-03191 (N.D. Ill.) (Feinerman, J.) (ECF No. 39) ("By agreement, and in light of *Miller v. Southwest Airlines Co.*, No. 18-3476, et al. (7th Cir. June 13, 2019), Defendants' motions to dismiss are granted in part (as to the claims of Plaintiff Taylor) and entered and continued in part (as to the claims of Plaintiff Mazya). The claims of Plaintiff Taylor are dismissed, either for want of subject matter jurisdiction under Rule 12(b)(1) or on the pleadings under Rule 12(c), without prejudice to Taylor's claims being pursued before the governing CBA's grievance and arbitration process.").

## B. The RLA Preempts State Claims That Are "Minor" Disputes Because They Must Be Resolved Only Through RLA Mechanisms.

Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). To that end, the RLA establishes a mandatory arbitral mechanism for two classes of disputes: major and minor. *Id.* at 252-53. Minor disputes concern the "interpretation or application" of a CBA or a "disagreement[] over how to give effect to the bargained-for agreement," and therefore, "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." *Id.* at 253-54. Accordingly, "a

---

[4] Moreover, the issue of whether the union consents on the employees' collective behalf are nonetheless "topics for resolution by an adjustment board rather than a judge." *Miller*, 926 F.3d at 904.

determination that [plaintiff's] complaint[] constitute[s] a minor dispute would pre-empt his

state-law action[]." *Id.* at 253. Moreover, "even if [a] claim is grounded upon rights which stem

from some source other than the CBA (such as state law), the claim will be preempted [by the

RLA] if it cannot be adjudicated without interpreting the CBA, or if it can be 'conclusively

resolved' by interpreting the CBA." *Brown*, 254 F.3d at 658 (citing *Hawaiian Airlines*, 512 U.S.

at 261-62; *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 305 (1989)).

"In determining whether a dispute can be resolved by reference to an existing agreement

(and thus labeled minor), we do not restrict our analysis to the explicit terms of the written

documents. Instead, we interpret the collective bargaining agreement to include those

established past practices that form the course of dealing between the parties." *Brotherhood of

Ry., Airlines & S.S. Clerks, Freight Handlers, Express & Station Employees v. Atchison, Topeka

& Santa Fe Ry. Co.*, 847 F.2d 403, 406 (7th Cir. 1988); *Consolidated Rail Corp.*, 491 U.S. at 311

(collective bargaining agreements may include implied, as well as express, terms, and "the

parties' 'practice, usage, and custom' is of significance in interpreting their agreement").

   **C.     Plaintiffs' BIPA Claims Are A "Minor" Dispute And Are Therefore
            Preempted.**

In their employment with Defendant, Plaintiffs' interests were represented by the IBT, as

their exclusive bargaining representative. (Pack Decl. ¶¶ 8.) Consistent with that authority, the

IBT and Defendant negotiated at arms' length regarding the terms and conditions of Plaintiffs'

employment. (Pack Decl. ¶¶ 8-9 and Ex. 1.) By the explicit terms of the resulting CBA, the

parties' agreed to a management rights clause providing that the CBA "is not intended to

interfere with, abridge or limit [Gate Gourmet] in the exercise of its function of management or

the control of its business and the direction of its working force" including "the extent of its

8

operations and the nature of the work to be performed," and the "schedules and number of hours an Employee shall work per day or per week." (Pack Decl. ¶¶ 8-9 and Ex. 1, Article 26 §§ 1-2.)

Defendant's interpretation of the management rights clause as sanctioning its timekeeping system is therefore consistent with both the explicit and implied terms of the CBA, such that the viability of Plaintiffs' BIPA claims "cannot be adjudicated without interpreting the CBA." *Brown*, 254 F.3d at 658; *Miller*, 926 F.3d at 903 ("Whether Southwest or United's union did consent to the collection and use of biometric data, or perhaps grant authority thorough a management-rights clause, is a question for an adjustment board.").

Moreover, the CBA contains a multi-step "Grievance Procedure" for the resolution of disputes arising under the CBA. (Pack Decl., Ex. 1 at Article 9). Specifically, the CBA first states that the grievance procedure applies "[s]hould differences arise between the Company and any Employees as to the meaning and application of the NMA, or if any other controversy or grievance arises. . . ." *Id.* Here, Plaintiffs failed to exhaust their remedies using the CBA's grievance procedures, and for this reason, their claims are barred. Accordingly, Plaintiffs' claims should be dismissed and referred to an adjustment board.[5]

## II. Alternatively, The Illinois Workers' Compensation Act Provides the Exclusive Remedy for Workplace Injuries Like the Injury that Plaintiffs Allege

In the alternative, Defendant respectfully submits that the IWCA preempts Plaintiffs' claims for damages under BIPA. The IWCA created a system where "in exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries and occupational diseases arising out of and in the course of employment."

---

[5] Even if Plaintiffs' claims were properly brought before the adjustment board, Plaintiffs have nonetheless waived their grievances pursuant to the CBA's Grievance Procedure because they did not submit such a grievance, as provided in Step 1 "within seven (7) calendar days of the Company's action giving rise to the grievance" and therefore, the grievance shall be considered to be waived and ***may not thereafter be submitted for adjustment in any forum***." *Id.* (Pack Decl., Ex. 1 at Article 9) (emphasis added).

9

*Folta v. Ferro Eng'g,* 2015 IL 118070, ¶12. "As part of this 'balancing,' the Act further provides that the statutory remedies under it shall serve as the employee's exclusive remedy if he sustains a compensable injury." *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983) (internal quotation omitted); *Cooley v. Power Constr. Co.*, *LLC*, 2018 IL App (1st) 171292, ¶12 ("Employees that are injured at work do not have a cause of action against their employer, and their exclusive remedy is to apply for benefits under the [IWCA]"); *see also* 820 ILCS § 305/5(a) (setting forth exclusivity provision); 820 ILCS § 305/11 (the "compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer").[6]  And to be sure, this exclusivity provision applies to Plaintiffs' claims under BIPA because that provision specifically provides that an employee has "[n]o common law *or statutory right* to recover damages from the employer * * * for injuries incurred in the course of her employment." *Richardson v. Cty. of Cook*, 250 Ill. App. 3d 544, 547 (1st Dist. 1993) (emphasis added); 820 ILCS § 305/5(a) (providing that an employee has "[n]o common law *or statutory right* to recover damages from the employer") (emphasis added); 820 ILCS § 305/11; *Gannon v. Chicago, M., St. P. & P. Ry. Co.*, 13 Ill. 2d 460, 463 (1958) (holding that [the IWCA] preempts employee claim brought under a statute: "The language of the [exclusivity] section, read alone, leaves no room for construction [because] it bars any 'statutory right to recover damages for injury"); *see also, e.g., Vacos v. LaSalle Madison Hotel Co.*, 21 Ill. App. 2d 569, 572 (1st Dist. 1959) (affirmed preemption of employee's statutory damages claims under the Dram Shop Act; the "clear language of [Section 5(a)] bars any right . . . to recover" outside the IWCA); *Carey v.*

---

[6] The policy reasons for exclusivity are eminently sound: the workers' compensation system acts as a form of insurance, providing for liability without fault on the part of the employer in return for relief from the prospect of large damage claims.  *See Wielgus v. Ryobi Techs., Inc.*, 875 F. Supp. 2d 854, 860 (N.D. Ill. 2012) (internal quotation omitted).

*Coca-Cola Bottling Co. of Chicago*, 48 Ill. App. 3d 482, 484 (2d Dist. 1977) (affirmed dismissal of employee's Structural Work Act claims against his employer under Section 5(a) of IWCA).

To circumvent this exclusivity rule, Plaintiffs must demonstrate that their injury [1] "was not accidental," [2] "did not arise from [their] employment," [3] "was not received during the course of [their] employment," or [4] "is not compensable under the Act." *See Nischan v. Stratosphere Quality, LLC,* 865 F.3d 922, 934 (7th Cir. 2017).

No exception to exclusivity applies here. First, to the extent Plaintiffs have suffered an injury as a result of placing a finger on a time-clock scanner, their "injury" would be "accidental," particularly given that the Complaint does not allege that Defendant implemented a time-clock system with a "specific intent to injure [its] employee[s]." *See Garland v. Morgan Stanley & Co.*, 2013 IL App (1st) 112121, ¶29 ("[i]n the context of the Act, to show that an injury is not accidental, the employee must establish that his employer or co-employee acted deliberately and with specific intent to injure the employee"); *see also, e.g., Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 704 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018) ("Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of 'accidental' and are preempted" by the IWCA) (citing authority); *Copass v. Ill. Power Co.*, 211 Ill. App. 3d 205, 214 (4th Dist. 1991) (similar); *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 35 (1st Dist. 1994) (similar). Second, Plaintiffs admit that their alleged injuries arose out of their employment and were received during the course of their employment. (*See* Compl. ¶¶ 48-64). Third**,** "[t]he fact that [Plaintiffs] sustained no physical injury or trauma is irrelevant to the applicability of the Act. Rather, an injury is compensable under the Act if it was sustained during the course of employment and arose from that employment." *See Richardson*, 250 Ill. App. 3d at 548;

11

*Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563 (1992) (employee that has a "psychological injury or harm has suffered an accident within the meaning of the Act, though no physical trauma or injury was sustained"); *see also Folta*, 2015 IL 118070 at ¶¶18-30 (broadly construing exclusivity provisions of Sections 5(a) and 11 to hold that an injury will be found to be "compensable under the Act" when it "aris[es] out of and in the course of the employment"); *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43 (1965) (similar); *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 85 (1985) (similar). Thus, Plaintiffs cannot establish that their injury avoids the exclusivity provision of the IWCA, and their claim for damages should be dismissed in accordance with Rule 12(b)(6).

### A. BIPA Does Not Repeal, or Purport To Repeal, the Exclusivity Provision in the IWCA.

There is no reason to think that, by enacting BIPA, Illinois sought to upheave the liability protection to common law and statutory claims that employers enjoy with respect to workplace-related injuries. For starters, BIPA appears in Chapter 740 of the Illinois Code, which is titled "Civil Liabilities," whereas laws specifically applicable to employers and their employees are contained in Chapter 820, which is aptly named the "Employment" chapter of the Illinois Code. Moreover, BIPA's "Legislative Findings" section makes no mention of employers or employees, 740 ILCS 14/5, and, in fact, the terms "employment" and "employee" are only contained in BIPA at the end of 740 ILCS 14/10, buried within the definition of the phrase "written release." Accordingly, because there is no express repeal of Workers' Compensation exclusivity,[7] BIPA "should not be construed to effect a change in the settled law of the State" because neither its place in the Illinois Code nor its text "clearly require[s] such a construction," *In re May 1991*

---

[7] Had the Illinois legislature intended BIPA to not be preempted by the Illinois Workers' Compensation Act's exclusivity provisions, it would have said so; but, it did not.

61381399v.5

*Will Cty. Grand Jury*, 152 Ill. 2d 381, 388 (1992), particularly since it is the IWCA, not BIPA, that contains an exclusivity provision, *see Gannon*, 13 Ill. 2d at 463 (holding that the IWCA preempts employee claim brought under a statute).

Even if there were "[a]n apparent conflict between statutes, they must be construed in harmony," *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶37, "so that no provisions are rendered inoperative," *Knolls Condominium Ass'n v. Harms*, 202 Ill.2d 450, 458–59, (2002); *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441–42 (2005) (the "court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible"). Here, it is easy to give effect to both BIPA and the IWCA: to the extent that an employee can otherwise demonstrate that injunctive or declaratory relief is appropriate, then that employee can obtain redress under BIPA; but to the extent that that employee seeks a "statutory right" to damages under BIPA, that claim would be preempted by the exclusive remedies under the IWCA.

**B.      The Workers' Compensation Act Preemption Here Does Not Conflict with Illinois Supreme Court's Decision in *Rosenbach v. Six Flags*.**

If the past is any indicator of the future, Plaintiffs' attorneys here will respond to this motion by invoking the Illinois Supreme Court's recent decision in *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶¶1-43. But *Rosenbach* must not be over-read. In that case, the certified questions before the Illinois Supreme Court dealt only with the issue of what it means to be an "aggrieved person" under section 20 of BIPA. *Rosenbach v. Six Flags Entm't Corp.*, 2017 IL App (2d) 170317, ¶15, *appeal allowed*, 98 N.E.3d 36, *and rev'd*, 2019 IL 123186, ¶40. Accordingly, in answering those questions, the Supreme Court resolved the pure legal question of what "fulfill[s] the statutory conditions in order to sue for legislatively created relief." *People v. Coe*, 2018 IL App (4th) 170359, ¶43. The Supreme Court, however, did not address IWCA

preemption, which is an affirmative defense that was not at issue in the certified questions before the Court. *See, e.g.*, *Milton v. Illinois Bell Tel. Co.*, 101 Ill. App. 3d 75, 81 (1st Dist. 1981) ("application of the Workmen's Compensation Act must be raised by an employer as an affirmative defense"); *Hiatt v. W. Plastics, Inc.*, 2014 IL App (2d) 140178, ¶ 105 (same); *Long v. Elborno*, 397 Ill. App. 3d 982, 988 (1st Dist. 2010) (under Rule 308 "our examination is strictly limited to the certified question presented to the court."); *Spears v. Ass'n of Illinois Elec. Co-op.*, 2013 IL App (4th) 120289, ¶15 (same); *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 469 (1998) (noting that a court should only answer a certified question if it asks a question of law and decline to answer where the ultimate disposition "will depend on the resolution of a host of factual predicates"). Thus, the Illinois Supreme Court simply did not address the interplay between BIPA and the IWCA.

That said, Defendants note that IWCA exclusivity does ***not*** prevent an employee from pursuing redress under BIPA. Rather, an employee can potentially seek injunctive and declaratory relief under BIPA, but not ***damages***, for it is the right to damages to which exclusivity pertains. 820 ILCS § 305/5(a) (providing that an employee has "[n]o common law or statutory right ***to recover damages*** from the employer") (emphasis added).

## CONCLUSION

Plaintiffs' claims are preempted by the RLA and therefore should be dismissed pursuant to Rule 12(b)(1). Alternatively, dismissal would nonetheless be appropriate because the allegations in the Complaint establish that whatever injury Plaintiffs suffered as an alleged result of Defendant's conduct occurred in the workplace in connection with their employment and are preempted by the IWCA, which provides the exclusive remedy for injuries that occur in the workplace.

61381399v.5

**DATED: February 10, 2020**            Respectfully submitted,

GATE GOURMET, INC.

By: /s/ Thomas E. Ahlering
      One of Their Attorneys

Thomas E. Ahlering
tahlering@seyfarth.com
Andrew R. Cockroft
acockroft@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Chicago, Illinois  60606-6448
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

15

61381399v.5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of February, 2020, I caused a copy of the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS to be filed through the Court's CM/ECF system, and will serve the below Counsel of Record via email:

> Ryan Stephan
> rstephan@stephanzouras.com
> Stephan Zouras, LLP
> 100 N. Riverside Plaza, Suite 2150
> Chicago, Illinois 60606

> _/s/Andrew R. Cockroft_
> Andrew R. Cockroft

61381399v.5